UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                     :   10-CV-9037 (CS)
                     :
101 MCMURRY, LLC,          :
                     :
          Plaintiff,    :  **MEMORANDUM OF LAW IN**
                     :  **SUPPORT OF MOTION TO**
          -against-    :  **DISMISS**
                     :
MARTIN PORTER, CRAIG WALLACE, :
WALLACE & WALLACE, PROOF OF  .
FUNDS, LLC, DANE GEROUS     :
BRIGADIER and ROBERT EDWARD  :
MAYES,III,               :
                     :
          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

### Preliminary Statement

Defendant Martin Porter submits this memorandum of law in support of his

motion to dismiss the complaint against him. The motion is based on the following

points of law: (1) the Court lacks personal jurisdiction over Porter; (2) the fraud

claims fail to plead with particularity the facts and circumstances constituting the

alleged fraud; and (3) the complaint fails to state a claim for relief against Porter.

As stated in the accompanying declaration, Porter does not do business in

the State of New York. He also lacks the required minimum contacts to sustain

jurisdiction, and none of the grounds for long-arm jurisdiction can be satisfied.

Thus, the Court should dismiss the claims against him for lack of personal

2

jurisdiction.

In addition, the complaint, which has now been amended twice, fails to
satisfy Rule 9(b) of the Federal Rules of Civil Procedure, which requires that a
complaint "state with particularity the circumstances constituting fraud." Rather
than state who said what to whom and when, the complaint relies on conclusory
group allegations that "the defendants" fraudulently failed to provide plaintiff with
a letter of credit.

Aside from that pleading defect, the "fraud" claim is facially insufficient
because it simply recasts a breach of contract claim in the language of fraud.
Attached as an exhibit to the complaint is a contract in which the defendants
agreed, under certain circumstances and subject to certain conditions, to provide
plaintiff with a letter of credit. The plaintiff now claims that the defendants failed
to deliver the letter of credit and that that breach constitutes a fraud. Since the
gravamen of the claim is for breach of the contract, the fraud claim is insufficient
as a matter of law because it is based on, and arises solely from, an alleged breach
of a contractual obligation.

The remaining claims, for conversion, unjust enrichment and RICO, are also
insufficient as a matter of law. No claim for conversion or unjust enrichment

exists as a matter of law where a claim is based on a breach of contract. In
addition, the plaintiff's wholly conclusory allegations of a RICO enterprise are
insufficient, and the failure to allege a pattern of racketeering activity renders the
complaint fatally defective.

## Background

As alleged in the Second Amended Complaint, the plaintiff, 101 McMurry,
LLC, a Nevada limited liability company, claims that it entered into an agreement
with Porter, a Florida domiciliary, to obtain a $16 million letter of credit. (Second
Amended Complaint ¶¶ 11 & Exhibit A thereto.) The Complaint also alleges that
after signing the agreement Porter and the other defendants fraudulently obtained a
$680,000 arrangement fee from the plaintiff. (*Id.* ¶ 21.) Asserting claims for
fraud, conversion, unjust enrichment and a civil RICO claim, the plaintiff claims
that Porter and others are liable for the damages in the amount of the $680,000
arrangement fee. (*Id.* ¶¶ 36-53.)

The sole nexus for these claims to New York is that plaintiff wired the
arrangement fee to an attorney escrow account in New York. (*Id.* ¶ 3, 22 & 29; *see
also* Complaint Exhibit A at Annex 3 (Escrow Agreement)). Other than the
escrow agent, none of the other parties have any connection with New York and

nothing about the underlying letter of credit transaction involved New York.

As set forth in Porter's supporting Declaration, Porter lives in Florida, and all his contacts with, or on behalf of, the plaintiff were conducted by him while in Florida. He does not reside in New York. He does not conduct business in New York. He owns no real or personal property in New York. And he did not at any time travel to New York in connection with the transaction that is the subject matter of this action. (Porter Declaration ¶ 2.)

Instead, Porter is a citizen, domiciliary and resident of the State of Florida, (Porter Declaration ¶ 2), and was personally served with the Summons at his home in Florida, as reflected by the certificate of service filed with the Court. (*See* Proof of Service, dated January 3, 2011; Dkt. #8).

None of the alleged misconduct occurred in New York. Although the Complaint is studiously vague about the particulars of the alleged misrepresentations, all of Porter's contacts with the plaintiff were by telephone or other electronic means while he was in Florida and the plaintiff's agents were in California. (Porter Declaration ¶ 5.) The "delivery" of the Agreement alleged in the Complaint refers to the fact that Porter signed the Agreement in Florida and sent the plaintiff that signed document to California, not New York. (See

Complaint ¶ 11.)

Indeed, at Porter's request, the Agreement provided that it would be governed by Florida law because Porter did not want to be subject to the laws or jurisdiction of another State. (Porter Declaration ¶ 5; *see* Complaint Exhibit A: Agreement ¶ 5.13 ("This Agreement shall be construed and governed by the Laws of Dade County, Florida in the Unites States of America.")

Thus, the only basis for jurisdiction in New York is the allegation that the plaintiff wired $680,000 to an escrow agent, Wallace & Wallace, which is a New York law firm with its principal place of business in Poughkeepsie, New York. Porter never met with Wallace & Wallace at its place of business in New York, and the only time he meet with an attorney from that firm was at a meeting in Atlanta, Georgia. (Porter Dec. ¶ 6.)

The escrow agreement, which is Annex E to the main agreement, states that the "parties agree to submit to the exclusive jurisdiction of the Courts of New York." (*See* Complaint Annex E ¶ 11.1). This clause applies to "disputes relating to the Escrow Agreement," (*id*), and it was created by Wallace & Wallace, presumably to provide that the law firms' obligations as escrow agent would be subject to New York laws and New York courts. (Porter Declaration ¶ 7.)  Since

the allegations against Porter are for "fraud," "conversion," "unjust enrichment" and "racketeering," (Complaint ¶¶ 21-36), this forum-selection clause cannot be applied to Porter under the circumstances, particularly since the plaintiff does not assert any claims against him based on breach of contract.

The plaintiff's failure to raise a claim based on the contract is not a mere oversight. On November 6, 2008, about a year after the contract was signed, the plaintiff and Porter executed an addendum to the contract. That addendum expressly states that the plaintiff acknowledged that it has no claim arising from the contract against Porter. In relevant part the addendum states:

> The Beneficiary [defined as the plaintiff] **acknowledges** that the Director of Finance [defined as Porter] and all associated parties **have completed their obligations** under the contract signed between Director of Finance and Beneficiary, dated December 14, 2007 (emphasis added).

(Exhibit 1 to the Porter Declaration.)

Under these circumstances, the forum-section clause of the escrow agreement cannot be used as a basis for jurisdiction because the plaintiff has acknowledged that it does not have any contract claim against Porter arising from its contract with him. Thus, the plaintiff's basis for jurisdiction must be based on some other theory of liability. For the reasons set forth below, no such basis exists, and the Second Amended Complaint should be dismissed.

*Argument*

*The Court Lacks Personal Jurisdiction Over Porter.*

The plaintiff bears the burden of establishing that the Court has jurisdiction over the defendant.[1] When the Court rules on a 12(b)(2) motion based on pleadings and affidavits, the plaintiff is required to make a prima facie showing of jurisdiction over the defendant.[2] While personal jurisdiction "must be established either at an evidentiary hearing or at trial," allegations submitted solely through competing affidavits are "construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."[3]

On the other hand, the Court need not accept "bland assertion[s] of conspiracy or agency."[4] In this case, since the Complaint makes only conclusory assertions in support of jurisdiction, the motion to dismiss should be granted.

There is no basis for a claim that Porter was at any time present in New York for purposes of personal jurisdiction and thus the Court must determine whether it can assert jurisdiction over Porter based on New York's long-arm

---

[1] *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).

[2] *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001); *Whitaker*, 261 F.3d at 208.

[3] *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).

[4] *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 793 (2d Cir. 1999).

8

statute, CPLR 302, and whether any such jurisdictional basis satisfies due process.[5]

To establish a prima facie showing of jurisdiction under the long-arm statute, the

plaintiff must "aver facts that if credited, would suffice to establish all the

requirements under one of § 302(a)'s subsections ...."[6]

The relevant provision of CPLR 302 provides that:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state.

Several courts have held that "wiring of money into New York State is

insufficient, by itself, to confer personal jurisdiction under CPLR 302 (a) (1)."[7] In

addition, Judge Rakoff's decision in *Semi Conductor Materials v. Citibank Int'l*

*PLC*, is instructive because there the defendant, like the defendants here, received

a fee from a New York bank for a foreign letter of credit transaction, and Judge

Rakoff held that that fact was not sufficient to constitute either doing business or

---

[5] Fed. R. Civ. Pro. 4(k)(1)(A)(service of summons established personal jurisdiction over a defendant who is subject to jurisdiction in the state where the district court is located). Rule 4(k)(1)(C) also provides a basis for jurisdiction "when authorized by federal statute," and the Complaint does purport to state a claim under the civil RICO statute, which has a nationwide service of process provision. 18 U.S.C. § 1965. However, for the reasons set forth in this memorandum, the Complaint fails to state a RICO claim and thus the nation-wide service provision does not apply.

[6] *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 785 (2d Cir. 1999).

[7] *Symenor v. State Street Bank*, 244 A.D.2d 880, 881 (4th Dept. 1997) (citing *Continental Field Serv. Corp. v ITEC Intl.*, 894 F. Supp. 151, 154 (S.D.N.Y 1995); *Colson Servs. Corp. v. Bank of Baltimore*, 712 F. Supp. 28, 31 (S.D.N.Y 1989); *cf., Black Riv. Assocs. v Newman*, 218 A.D. 2d 273 (4th Dept. 1996); *see also Baptichon v. Nevada State Bank*, 304 F. Supp.2d 451 (S.D.N.Y. 2004).

9

transacting business in the State.[8]  The wiring of the arrangement fee into the New

York escrow account appears from the face of the Complaint to be the only

relevant contact with this State. Thus, the Court should find, as other courts have

found in similar circumstances, that jurisdiction is insufficient. [9]

The plaintiff cannot support jurisdiction over Porter based on the conclusory

allegation that the escrow agent was Porter's agent. In order to sustain jurisdiction

over a non-domiciliary based on an alleged agent's activities in this State, the

plaintiff must establish that the agent "engages in purposeful activities in New

York for the benefit of defendants *and* defendants exercises sufficient control over

[the agent] to make him their agent."[10]

Here, the escrow agent's sole duties were those set forth in the Escrow

Agreement, which was to pay certain fees upon satisfaction of the escrow

conditions. The escrow agent had no other obligations, and there is no basis to

conclude that the escrow agent was working for Porter or that Porter exercised any

---

[8]  969 F. Supp. 243 (S.D.N.Y. 1997).

[9]  *Id.; Faravelli v. Bankers Trust Co.*, 85 A.D. 2d 332, 447 N.Y.S.2d 962 (1st Dept. 1982)(non-domiciliary not subject to personal jurisdiction where the real nexus of the transaction was not New York and "[t]he mere mailing from India of a draft together with documents to a New York bank for payment does not constitute transacting business within New York), *aff'd*, 59 N.Y.2d 615, 463 N.Y.S.2d 194 (1983); *DirectTV Latin America, LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 424 (S.D.N.Y. 2010)("Even if some individuals received kickbacks from cash wired into and out of a bank account at a New York bank, the payments to these persons "could have been made anywhere and it would not have changed the nature of the plaintiffs' allegations.")

[10]  *Polansky v. Gelrod*, 20 A.D.3d 663, 798 N.Y.S.2d 762 (3d Dept. 2005)(citing *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988) (no jurisdiction where plaintiff only offered conclusory allegations of agency and control)

control over the escrow agent.

*The Fraud Claim is Insufficient.*

There are two fundamental defects with the fraud claims.  First, the plaintiff fails to state with particularity the circumstances constituting the alleged fraud. Second, the plaintiff seeks to recast a breach of contract claim into the language of fraud.  Both defects are fatal.

The Complaint seeks to impermissibly recast a contract claim into a fraud claim by alleging that the defendants breached a contractual obligation to deliver a letter of credit and that that breach constitutes a "fraud."  That is insufficient.[11]

Similarly, the Complaint fails to plead with any particularity the circumstances constituting the "fraud," as required by Rule 9(b) of the Federal Rules of Civil Procedure.  Instead, the complaint makes several allegations about immaterial representations in a brochure that are not factual representations and appends to those allegations the conclusory claim that the defendants failed "fraudulently" to deliver the letter of credit.  A complaint alleging fraud against multiple defendants must state the allegations specifically attributable to each

---

[11] *See Krepps v Reiner*, 2010 U.S. Lexis App. 9866 (2d Cir. May 14, 2010 ("it is the identity of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which plaintiff chose to frame his complaint," quoting *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 39 (2d Cir. 1992)).

individual defendant.[12] Since there are no specifics about a false statement of fact by any one particular defendant, no fraud claim has been stated.

*The Plaintiff Fails to Plead a Civil RICO Claim.*

Absence long-arm jurisdiction, the only possible basis for this Court to maintain jurisdiction over Porter would be the use of a nation-wide service of process provision under federal law. On that basis, the plaintiff purports to state a claim under civil RICO, thereby seeking the benefit of its nation-wide service of process provision, 18 U.S.C. § 1965.[13]

Yet the plaintiff's RICO claim is facially insufficient: the plaintiff fails to allege an enterprise and it fails to allege a pattern of racketeering activity, both of which are essential elements of a civil RICO claim.[14] Moreover, the plaintiff does not and cannot claim that this one-time purported fraud was the product of an on-going enterprise functioning as a continuing unit with an organizational structure.[15]

---

[12] *DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir. 1987); *Maersk, Inc. v. Neewra*, Inc., 554 F. Supp. 2d 424, 460-61 (S.D.N.Y. 2008); *Rich v. Maidstone Fin., Inc.*, 98 Civ. 2569, 2001 U.S. Dist. LEXIS 3167, 2001 WL 286757 at *6 (S.D.N.Y. Mar. 23, 2001) ("[W]hen fraud is alleged against multiple defendants, a plaintiff must set forth separately the acts complained of by each defendant. A complaint may not simply clump defendants together in vague allegations to meet the pleading requirements of Rule 9(b).").

[13] *See generally PT United Can Co. v. Crown Cork & Seal, Co.*, 138 F. 3d 65 (2d Cir. 1998).

[14] *Salinas v. United States*, 522 U.S. 52, 62 (1997).

[15] *United States v. Turkette*, 542 U.S. 576, 583 (1981); *United States v. Errico*, 635 F. 2d 152, 156 (2d Cir. 1980)(requiring continued operations for an illegal purpose with a community of interests and a continuing core of personnel); *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F. 3d 91, 97-98 (2d Cir. 1997)(plaintiff must show at least two predicate acts that are related and amount to, or threaten, continuing criminal activity).

12

A single, isolated transaction, even one grounded in allegations of fraud, cannot constitute a civil RICO claim. As noted by the Second Circuit in *Schlaifer Nance & Co. v. Estate of Warhal*, 119 F. 3d 91, 98 (2d Cir. 1997), "courts must take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO," and in a holding that applies with particular force here, the Second Circuit held that a single fraudulent act in negotiating an agreement is simply insufficient to state a claim.

For these reasons, no civil RICO claim has been stated in this case. In only the barest possible way, the Complaint seeks to set forth a RICO claim. Using only conclusory language and without any effort to set forth the enterprise and pattern elements or the roles that each of the defendants purportedly played in this "enterprise," the plaintiff's RICO claim is facially insufficient and should be dismissed.

*The Conversion Claim.*

The third claim in the Complaint for "conversion" is based on a single, conclusory assertion that "Defendants have converted plaintiff's funds, in the amount of $680,000.00, to their own use."[16] The plaintiff fails to claim which of the defendants was responsible for this alleged conversion, and as noted above,

_____

[16] Complaint ¶ 40.

settled law holds that simply lumping together all defendants in a single group allegation is insufficient as a matter of law.[17]

Moreover, the claim is insufficient as a matter of law for another important reason. "A conversion claim cannot be based only on the allegation that a defendant received money and failed to remit payment to the plaintiff."[18] Instead, plaintiff must claim an immediate right of possession to specifically identifiable funds and that the defendant exercised an unauthorized dominion over such funds to the exclusion of the plaintiff's rights.[19] For this reason, no claim for conversion arises where damages are merely sought for breach of contract.[20]

*The Unjust Enrichment Claim.*

The final claim asserted in the Complaint is for unjust enrichment. This claim is insufficient as a matter of law.

Like the "conversion" claim, the "unjust enrichment" claim is based on a single, conclusory allegation in the Complaint that "Defendant(s) have thus been

---

[17] *Atuahene v . City of Hartford*, 2001 U.S. App. Lexis 11694 ** 3 (2d Cir. May 31, 2001) ("Although Fed. R. Civ. P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests. By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy this minimum standard, even after the district court graciously accorded him several opportunities to correct its manifest flaws.").

[18] *Interstate Adjusters, Inc. v. First Fidelity Bank, N.A.*, 251 A.D. 2d 232, 675 N.Y.S. 2d 42 (1st Dept. 1998).

[19] *Whitman Realty Group, Inc. v. Galano*, 41 A.D.2d 590, 838 N.Y.S.2d 585 (2nd Dept. 2007).

[20] *Interstate Adjusters, Inc., supra,* 251 A.D 2d at 234 ("Here, plaintiff's conversion claim alleged no independent facts sufficient to give rise to tort liability and thus was nothing but a restatement of its breach of contract claim.")(citation omitted); *Accord Whitman Realty Group, supra.*

14

unjustly enriched in the amount of \$680,000.00."[21]  As noted above with respect to

the conversion claim, lumping together all the defendants in this way is insufficient

as a matter of law.[22]

Moreover, "[u]njust enrichment is an equitable claim that is unavailable

where an adequate remedy at law exists."[23]  Since the Complaint is grounded in a

claim for damages for breach of contract, which is a remedy at law, the claim of

unjust enrichment, which is an equitable claim, must be dismissed.[24]

## Conclusion

This Court lacks personal jurisdiction over Porter.  The long-arm statute

does not reach him and the nation-wide service provision of the civil RICO claim

cannot be used to obtain jurisdiction because the Complaint cannot state a RICO

claim.  Since the plaintiff has already amended twice, the Second Amended

---

[21]  Complaint ¶ 43.

[22]  *See* n. 12 *supra.*

[23]  *Federal Treasury Enterprises v. Sprits International N.V.*, 2010 U.S. App. Lexis 24386 at *4 (2d Cir. Nov. 24, 2010).

[24]  *Id; see also Firefly Equities LLC v. Ultimate Combustion Co*, 2010 U.S. Dist. Lexis 133566 at * 16 (S.D.N.Y Dec. 14, 2010) (no claim for unjust enrichment can be had where there is a breach of contract claim as well).

Complaint should be dismissed with prejudice on the merits.

Dated:  May 25, 2011

Nathaniel B. Smith
111 Broadway – Suite 1305
New York, New York 10006
212-227-7062 (tel)
212-34604665 (fax)
natsmith@att.net
Attorney for Martin Porter